ANNA ANTONIA DE MARIA, as Administratrix, etc., of MIKE DE MARIA, Deceased, Respondent, v. NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Second Department, December 14, 1917.

Railroads — negligence — action under Federal Employers' Liability Act — erroneous charge — contributory negligence — appeal — erroneous instruction invited by defendant not ground for reversal.

Where, in an action under the Federal Employers' Liability Act to recover for the death of an employee who was struck by an engine, the court properly charged that contributory negligence would not prevent any recovery, and then at the request of the defendant charged that if the deceased was a watchman at the time of the accident no recovery could be had, a verdict for $16,000 subsequently reduced one-third for contributory negligence should be affirmed.

Counsel cannot urge as reversible error an erroneous instruction to the jury induced by himself.

THOMAS and MILLS, JJ., dissented, with opinion.

APPEAL by the defendant, New York Central Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 6th day of February, 1917, upon the verdict of a jury for $10,666.67, and also from an order entered in said clerk's office on the 7th day of March, 1917, denying defendant's motion for a new trial made upon the minutes, and also from said order as resettled by an order entered on the 17th day of March, 1917.

*John F. Brennan,* for the appellant.

*Thomas J. O' Neill* [*Leonard F. Fish* with him on the brief], for the respondent.

PUTNAM, J.:

Plaintiff recovered under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143) for the death of the decedent, De Maria, an employee on defendant's tracks at North White Plains. During a snow storm decedent, with one Mucci, was cleaning out

switch No. 37, on a north-bound track.   After brushing out
the snow, kerosene oil was poured in to be lighted so as to
thaw out the switch.   Mucci was attempting to light the oil
with deceased stooping over him.   It was about six-ten A. M.
when daylight was beginning.   A freight locomotive backing
south on this north-bound track ran upon the men, killing
De Maria, and injuring Mucci.   Against defendant were
charges of not having a watchman stationed to warn of
approaching trains, and omission of lights and signals by the
backing engine.   Earlier in the night Sam Belmont had been
a watchman with a whistle to warn the trackmen.   There
was an issue whether deceased had taken over this duty,
and had been handed the whistle to act as watchman.   Defend-
ant had settled with Mucci for his injuries.   On this trial
plaintiff called Mucci, who was examined through an inter-
preter.   His testimony, as interrupted by the explanations of
the interpreter, objections and rulings, covers fifty-eight
printed pages.   There were inconsistencies and contradictions
about this alleged handing over of the whistle to the deceased.
Thus the jury had the issues of signals by the backing engine,
and whether deceased had himself undertaken the duty to
watch and warn Mucci.

At the end of a clear charge under the Federal Employers'
Liability Act, counsel for defendant said: " I ask your
Honor to charge that if this man when sent there was given
a whistle, they cannot recover."   The court: " Yes."

The jury rendered a sealed verdict in which they found
plaintiff's total damage at $16,000, which they reduced
one-third for deceased's contributory negligence.

Appellant contends that no recovery should be sustained
under this instruction.

The majority of us, however, think that this request being
erroneous under the Federal Employers' Liability Act (which
the charge had clearly explained as not denying any recovery
in case of contributory negligence) was obviously not followed
by the jury.   If defendant's counsel at the moment induced
an erroneous instruction to the jury, he cannot afterwards
urge what he had himself invited as reversible error.   The
jury is presumed to have taken the charge as a whole.   (*People
v. Gilbert,* 199 N. Y. 10, 26.)   The special verdict removes all

doubt. It stands on a finding based on the only substantial ground urged against plaintiff, which was the omissions of deceased as a watchman, for which the recovery has been properly lessened.

Therefore, the judgment and order should be affirmed, with costs.

JENKS, P. J., and BLACKMAR, J., concurred; THOMAS, J., read for reversal, with whom MILLS, J., concurred.

THOMAS, J. (dissenting):

Decedent was killed by a backing locomotive at about six o'clock in February. A severe snow storm, beginning before midnight, was continuing, and to rid the way of snow, men were engaged at several places, but at the switch where the accident happened only decedent and Mucci were stationed. Earlier, Sam Belmont as watchman had been there with Mucci, but had retired when decedent came. Mucci was burning out the switch, and the defendant had recognized the duty of guarding him from oncoming cars, and it was defendant's contention on the trial, as it is on this appeal, that decedent as watchman continued that service, and that those on the locomotive used all the care that was due a watchman, whose very ·duty it was· to know of its coming, and that decedent was killed, not by defendant's fault, but by his own neglect to see what he was set to see. The defendant tried the case on that theory, and, as will later appear, the court in its charge adopted that view. So a struggle centered on this: Was De Maria, the decedent, a watchman? All the credible evidence showed beyond peradventure that De Maria was a watchman and nothing else. The omission to furnish a watchman could have been presented as a serious charge against the master. There were some other men not far distant, but Mucci, although somewhat isolated, engrossed in the work of burning the snow out of the switch, was as much entitled to a watchman as if others had been present. The duty of guarding men scattered along a track is not .abated because there is but one man at a particular place. In the present instance four men were working northerly from the coal station, and four southerly of it, and all were clearing

switches.   John Belmont sent De Maria to relieve Sam
Belmont, who had been watching trains all night.   The
regular work of the latter, like that of De Maria, was that of
a track walker, and, like De Maria, Sam Belmont was detailed
in the emergency to act as watchman.   When De Maria
came, he informed Sam Belmont that he was sent to act as
watchman and to receive the whistle which was used for
warning, and the whistle was given to De Maria.   So the
testimony showed that the defendant was observing the duty
of providing a watchman first through Sam Belmont and
then through De Maria.   But that is not all the evidence.
The plaintiff called but one witness to the accident, and that
was Luigi Mucci himself.   He testified that Sam Belmont
was there with a whistle, " when the train come, he notify
us; " that as Sam left De Maria came and talked with Sam,
and that he saw Sam hand De Maria a whistle.   The state-
ment was assured by Mucci.   Moreover, in a statement
made by Mucci to a stenographer and defendant's agent, he
said: " When Mike De Maria came to me he said, ' Luigi,
you work here, I am here to watch the train,' " and on the
trial he testified that he so said, and that he also said: " I
did not have a lantern, I depended upon Mike De Maria to
have him warn me with a whistle."   After some further
effort to commit the witness to testimony that De Maria
participated in the work of burning out the switch, a recess
was taken, and after the court had convened Mucci testified
that he did not see " Sam give De Maria a whistle; " that he
did not say anything to the lady as he had admitted that he
had done, and that Sam Belmont told him that he had given
the whistle to De Maria, and then, " I said he gave this
whistle to De Maria, but I didn't see it."   " Why did you
say it, then?   A. Because I forgot it," and after some further
similar vain attempt at explanation there was this: " Well,
did you see Sam give the whistle to Mike?   A. No."   There
was a continuance of the effort to show from Mucci that
De Maria was not acting as a watchman, and then this:
" Q. Now, I have asked you this morning whether this man
had his coat open, to protect the wind from your match, and
you said no.   Now, I want you to show us what he was doing
while you were trying to light these several matches that

went out? A. He was standing up watching me." The reference in the question is to an earlier inquiry as to what the men were severally doing when the accident happened, in the course of which he testified: " I was about to bend like this manner, and De Maria wasn't watching, and the train came." There is a revelation of De Maria's position and the cause of the accident, or at least a cause of it. Mucci was injured, and although he had settled with the defendant he was not in its employ and there was displayed a grievance arising from a breach of the terms of settlement. Could any fair mind fail to conclude on such record that De Maria was stationed as a watchman, and will the reproach be suffered that upon the testimony of Mucci, that was one thing before, and something else after, recess, the jury was justified in inferring that De Maria was not a watchman? The learned counsel for the defendant, who is nothing lacking in fairness or intelligence, and who does not harass courts and juries with foibles, took the position that the defendant used all the care that the law demanded in behalf of a watchman, and that it was the watchman's inattention that caused the accident. It was an attitude that evidence warranted and, as the court thought, compelled. For it appeared that duty required the presence of the watchman; that there had been one during the night; that De Maria was sent to take his place and did take it. The law and the facts united. Even the plaintiff's witness proved it, until his post-recess recantation, which he tried to defend with a folly that made palpable his perjury. The very purpose of a watchman is to discover trains as usually operated. He signals danger. But he can warn only by diligence in outlook. If, then, the train came back in a usual way, albeit with tender ahead, as a switching engine may although a turntable was available, which plaintiff was improperly allowed to show, it was the duty of De Maria to know of its approach and to warn Mucci, and the learned court concluded that the defendant did its full duty to a watchman, and that the plaintiff should not recover in case the jury found that De Maria was such watchman. That was the issue the defendant proffered and against which the plaintiff contended. That view the court approved, and

charged in effect that if De Maria was a watchman plaintiff could not recover. In the main charge the learned court charged: "What was the condition there? Was the bell rung? Did they hear it? Were they careless? Did Mike have the whistle and was it his business to warn and to look out and warn Luigi, and was he careless? For if this accident happened through his own carelessness altogether, there can be no recovery here for the plaintiff. The defendant, on the other hand, has produced, as I have said, evidence tending to show that a warning was given, that the bell on the engine was rung and that a lookout for danger was maintained by the fireman and the engineer and that a watchman was provided and that the dead man himself was given a whistle and instructed to watch and protect the other man while he was engaged in cleaning out the switch in question." But what if the jury found that De Maria was a watchman? The court provided for that. " Mr. Brennan: I ask your Honor to charge that if this man when sent there was given a whistle they cannot recover. The Court: Yes." Thus a contention between skillful lawyers was brought to this: that the jury should decide (1) was De Maria a watchman? If so, there could be no recovery. (2) If he was not a watchman, was defendant negligent? If so, plaintiff could recover. The jury did not pass upon the question of defendant's negligence if De Maria was found to be a watchman. It was not allowed to do so. The court took that question away from the jury and solved it as a question of law. It may be said that the court might have charged, in view of the snow storm, that the jury could find the defendant negligent even if De Maria was a watchman. But that question was not left to the jury and is not here. But an attempt is now made to sustain the verdict upon the very ground that the jury could find that the defendant was lacking in duty to De Maria as a watchman, although that issue was taken from the jury, or upon the ground that the charge may be disregarded, as if what the court charged is a matter of indifference. Upon the issue submitted, there is no credible evidence to sustain the verdict. I do not need to defend the words of the request. If the whistle was given De Maria, he became the watchman. The evidence and the charge regarded the possession of the whistle

as investing De Maria with the duty to watch. The whistle was the badge of office. There is no evidence tolerated by the law that De Maria was not the watchman. All the evidence points to it; Mucci, the sole witness for the plaintiff, confirmed it until, with explanation too feeble to conceal his perversion, he attempted to gainsay it after recess. And yet upon this witness alone must the plaintiff depend to show that no bell was rung. The verdict should not be permitted to rest upon a person who shifts after the lunch hour and furnishes no explanation for his inverted testimony.

I would have the case retried upon the issue that has not been decided, viz.: Was the defendant negligent in warning De Maria of the approaching engine, although he was a watchman; and to that end a new trial should be granted, costs to abide the event.

MILLS, J., concurred.

Judgment and order affirmed, with costs.